**BANK ONE TEXAS, N.A., Appellant,**

v.

**AMERITRUST TEXAS, N.A., Appellee.**

**No. 05–92–01324–CV.**

Court of Appeals of Texas, Dallas.

May 7, 1993.

Rehearing Overruled June 18, 1993.

Edward V. Smith, III, Taylor & Mizell, P.C., Dallas, for appellant.

R.W. Calloway, Turner, Rodgers, Calloway & Norris, Sydney Bosworth McDole, Jones, Day, Reavis & Pogue, Dallas, for appellee.

Before THOMAS, MALONEY and BARBER, JJ.

## OPINION

BARBER, Justice.

Ameritrust Texas sought to probate a will. It moved for declaratory judgment that it was the proper executor of the will under the Texas Substitute Fiduciary Act (the Act). Bank One answered and counterclaimed for declaratory judgment that it was the proper executor. Both parties moved for summary judgment. The probate court granted Ameritrust's motion for summary judgment and denied Bank One's motion for summary judgment. Bank One appeals. We affirm the probate court's judgment.

## SUMMARY OF FACTS

Testator Mussler, by his will dated March 25, 1986, appointed MBank Dallas, N.A., Texas, as independent executor: "I designate and appoint MBank Dallas, N.A., Dallas, Texas, as independent executor (MBank, Dallas, N.A. and its successors in this office, if any, are hereinafter referred to as my 'Executor') of this Will and of my estate."

On May 28, 1987, the Texas Legislature passed the Substitute Fiduciary Act, Tex. Rev.Civ.Stat.Ann. art. 548h (Vernon Supp. 1993). The Act provides that a subsidiary trust company and one or more of its affiliated banks can, subject to certain requirements, enter into an agreement whereby the subsidiary trust company will be substi-

tuted as fiduciary for an affiliated bank. *Id.* § 2(a). The subsidiary trust company's "owning bank holding company" must file with the banking commissioner an irrevocable undertaking to be fully responsible for the existing and future fiduciary acts and omissions of its subsidiary trust company. *Id.* § 7(a).

MCorp, a bank holding company, owned all the stock of MCorp Financial, Inc., which owned MBank Dallas *and* all the stock of MVestment Corp. MVestment owned MTrust Corp. MCorp filed an instrument with the Texas Banking Commissioner in September 1987, assuming full responsibility for the fiduciary acts and omissions of MTrust Corp. On October 1, 1987, an agreement was entered into under the Act, whereby MTrust Corp was substituted as fiduciary for MBank Dallas. The agreement provided as follows:

> Pursuant to the Texas Substitute Fiduciary Act, ch. 207 (May 25, 1987) MBank Dallas, N.A. and MTrust Corp hereby agree that effective January 1, 1988, MTrust Corp shall be substituted for MBank Dallas, N.A. as Fiduciary or Co-Fiduciary for all fiduciary accounts listed in Schedule A attached hereto and made a part hereof. In no case will this substitution effectuate a change in the Situs of Administration.

On March 28, 1989, the Comptroller of Currency declared MBank Dallas insolvent and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. The same day, the FDIC, as receiver, transferred certain deposits, assets, liabilities, rights, duties, and obligations of MBank Dallas to the Deposit Insurance Bridge Bank, N.A. A Purchase and Assumption Agreement between the FDIC and the Bridge Bank provided as follows:

> The assuming bank shall, to the full extent permitted by law, succeed to, and shall be entitled to take and execute, the appointment to all executorships, trustee-

ships, guardianships, and other fiduciary or representative capacities to which the Failed Bank is or may be named in wills, whenever probated, or to which the failed bank is or may be named or appointed by other instrument.

On July 12, 1989, the Bridge Bank was renamed Bank One, Texas, N.A.

On October 11, 1989, MCorp, MCorp Financial, and MVestment Corp entered into a Stock Purchase Agreement with Ameritrust Corporation under which MCorp Financial would sell all the stock of MVestment Corp and MTrust Corp to Ameritrust. The agreement was closed on February 27, 1990. On that date Ameritrust executed and filed with the Texas Banking Commissioner an Instrument of Assumption under section 7 of the Act. Ameritrust assumed all of MCorp's liabilities and obligations under MCorp's Irrevocable Undertaking of Responsibility and Addendum thereto.

Testator Mussler died October 9, 1989. On October 11, 1989, Ameritrust filed an Application for Probate of Will and Issuance of Letters Testamentary in his estate. On October 23, 1989, the probate court signed an order probating the Mussler will and granting letters testamentary to Ameritrust. On April 15, 1991, Ameritrust asked the probate court to declare Ameritrust the proper executor under the Act.

On May 6, 1991, Bank One answered and counterclaimed for declaratory judgment. Bank One requested a declaration that Bank One, not Ameritrust, be the proper executor because of the Purchase and Assumption Agreement with the FDIC and that Ameritrust could not be executor because it was not an affiliated bank within the meaning of the Act when Mussler died.

On February 2, 1992, the probate court granted Ameritrust's motion for summary judgment and denied Bank One's motion for summary judgment. Bank One appeals.[1]

---

1. *Bank One's points of error:*
 1. The trial court erred in granting Ameritrust's motion for summary judgment.
 2. The trial court erred in denying Bank One's motion for summary judgment.

(a) The necessary affiliation required by the Act does not exist to allow Ameritrust to act as fiduciary in this case.

## STANDARDS OF REVIEW

 Summary judgment is proper only if the record shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See* Tex.R.Civ.P. 166a(c). In reviewing a summary judgment, we are bound by these standards: (1) the movant has the burden of showing the absence of material fact issues and his entitlement to judgment as a matter of law; (2) in deciding whether there are disputed material fact issues, evidence favorable to the nonmovant is taken as true; (3) every reasonable inference is indulged in the nonmovant's favor, and any doubts are resolved in his favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The fact that both parties moved for summary judgment implies that the matter in controversy is one for the court to decide as a matter of law. *See McDonald v. Carroll*, 783 S.W.2d 286, 287 (Tex.App.—Dallas 1989, writ denied); *York v. McBee*, 308 S.W.2d 951 (Tex. Civ.App.—Waco 1957, writ ref'd n.r.e.).

## APPLICATION OF LAW

 The Act is entitled *An Act Relating to Substitution of Certain Fiduciaries.* In construing a statute, we are bound by the following:

The fundamental rule controlling the construction of a statute is to ascertain the intention of the Legislature expressed therein. That intention should be ascertained from the entire act, and not from isolated portions thereof. This Court has repeatedly held that the intention of the Legislature in enacting a law is the law itself; and hence the aim and object of construction is to ascertain and enforce the legislative intent and not to defeat, nullify, or thwart it.

*City of Mason v. West Tex. Util. Co.*, 150 Tex. 18, 26, 237 S.W.2d 273, 278 (1951).

 Bank One contends that the Act did not provide for substitution of the subsidiary trust company when the designation is prospective and that the will did not become effective until the death of the testator. We agree that a will becomes effective at the death of the testator. *Boone v. Stone*, 142 S.W.2d 936, 939 (Tex. Civ.App.—Fort Worth 1940, no writ). Such has been true for a long time.[2] However, section 2(d) of the Act provides as follows:

Except as provided by this subsection, the prospective designation in a will or other instrument of the affiliated bank as fiduciary is considered designation of the subsidiary trust company, and any grant in the will or other instrument of any discretionary power is considered conferred on the subsidiary trust company. However, the affiliated bank and subsidiary trust company may agree in writing to have the designation of the affiliated bank as fiduciary be binding, or the creator of the fiduciary account may, by appropriate language in the document creating the fiduciary account, provide that the fiduciary account is not eligible for substitution under this Act.

Tex.Rev.Civ.Stat.Ann. art. 548h, § 2(d). The testator's intent, as expressed in the will, was that MBank and its successors would be "my Executor." "[A]ll the rules of construction have been worked out by the courts to ascertain the intention of the testator...." *Welch v. Straach*, 531 S.W.2d 319, 322 (Tex.1975). The law reads into a will applicable statutory provisions

(b) Ameritrust cannot satisfy the specific requirements of the Act regarding prospective fiduciary appointments.

(c) Sections 2(d) and (e) of the Act cannot be construed to effect a substitution of Ameritrust as executor for MBank Dallas.

(d) Ameritrust could not accomplish substitution of prospective accounts under the provisions of the Act governing general transfers.

(e) If Ameritrust is substituted for MBank Dallas under the terms of the Act as written, the Act is unconstitutional under both the United States Constitution and the Texas Constitution.

(f) Construction of the Act to provide for automatic substitution of Ameritrust to prospective accounts on the effective date of the substitution agreement interferes with the FDIC's ability to transfer unmatured accounts under the Bridge Bank Statute, 12 U.S.C. § 1821(n) and the purchase and assumption agreement transactions between FDIC, as receiver, and the various MBanks, and is preempted by federal law.

2. "For a testament is of force after men are dead: otherwise it is of no strength at all while the testator liveth." *Hebrews* 9:17 (King James).

and makes them part of the will. *See Garza v. Cavazos,* 148 Tex. 138, 144, 221 S.W.2d 549, 553 (1949). If the statute and the intent of the testator are to be given effect, Ameritrust is the successor executor to MBank Dallas.

Section 2(g) of the statute provides:

On the effective date [of the substitution] the subsidiary trust company succeeds to all right, title, and interest in all property that the affiliated bank holds as fiduciary, except property held for accounts for which there has been no substitution under this Act, without the necessity of any instrument of transfer or conveyance, and the subsidiary trust company shall, without the necessity of any judicial action or action by the creator of the fiduciary account, become fiduciary and perform all the duties and obligations and exercise all the powers and authority connected with or incidental to that fiduciary capacity in the same manner as if the subsidiary trust company had been originally named or designated fiduciary. However, the affiliated bank is responsible and liable for all actions taken by it while it acted as fiduciary.

TEX.REV.CIV.STAT.ANN. art. 548h, § 2(g).

██ Bank One contends that on the effective date of the substitution agreement, there was no right, title, and interest in property that the affiliated bank (MBank Dallas) held as fiduciary because the will or trust agreement had not become effective. However, an inchoate right to a contingent future benefit may constitute property. *See Segal v. Rochelle,* 336 F.2d 298, 303 (5th Cir.1964), *aff'd,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

Although there was no fiduciary account to file, a valuable property right did exist; hence this litigation. The expressed intent of the legislation is that the subsidiary trust company succeed to all right, title, and interest in all property held by the bank as fiduciary. Failure to file a nonexistent account does not constitute sufficient basis for failure to give effect to the intent of the statute.

In *NCNB Texas National Bank v. Cowden,* 895 F.2d 1488 (5th Cir.1990), the United States Court of Appeals discussed the narrow scope of preemption effected by the Bridge Bank Act, 12 U.S.C. § 1821(n), in connection with the removal of bridge bank fiduciaries:

This does not mean that a bridge bank that succeeds to the fiduciary appointments of an insolvent bank may never be subject to removal. What it does mean is that the tenure of the bridge bank is governed by state law. Once the transfer of appointments is complete, the bridge bank is treated as any other fiduciary under state law and it may be removed from office for the same reasons. Under current Texas law, the removal of trustees is governed by section 113.082 of the Texas Trust Act. The removal of executors and administrators is governed by various provisions in the Texas Probate Code. We express no opinion as to the proper interpretation of those removal provisions other than to state that it appears unlikely that they would support removal of a bridge bank as fiduciary simply because the originating instrument designated an alternate fiduciary or set forth a procedure for selecting an alternate fiduciary. However, should state legislatures consider the designation of a fiduciary of choice sufficiently important, our decision should not be read as prohibiting the amendment of removal statutes to provide greater freedom in the replacement of fiduciaries. Of course, any such statute may not be aimed solely at bridge banks, for it has been established at least since *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), that states may not enact laws that discriminate against national banks. Thus, any modification of removal statutes should apply generally to withstand constitutional scrutiny.

It seems likely that most states will simply accept the consequences of FDIC's transfer authority. The pre-emption that results is indeed narrow. It affects only the appointment of successor fiduciaries when FDIC determines a purchase and assumption transaction is appropriate to

continue the operations of an insolvent banking institution. In all other respects, state regulation of fiduciaries is unaffected. In the end, the benefits of continuous banking service, including the continuous service of a knowledgeable fiduciary, that result from the pre-emption clearly will outweigh the infringement on state interests.

*Cowden,* 895 F.2d at 1502–03 (footnotes omitted).

If a state may provide for removal of a bridge bank fiduciary under general state law, surely the state may provide for the substitution of prospectively designated fiduciaries. Such substitution provides for the continuous service of a knowledgeable fiduciary and, in carrying out the intent of the legislature and of the testator, does not inhibit the purpose of the bridge bank statute.

Bank One seeks to have the Act stricken down as unconstitutional because the notice provisions of the Act fail to address prospective fiduciary appointments.

 General rules of construction assume and presume that the legislature acted in a constitutional manner. *See Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843–44, 73 L.Ed.2d 508 (1982) (plurality op.); *Texas Pub. Bldg. Auth. v. Mattox,* 686 S.W.2d 924, 927 (Tex.1985). Further, when the legislature enacts a law that affects a general class of persons, those persons have received procedural due process by the legislative process itself. *See United States v. LULAC,* 793 F.2d 636, 648 (5th Cir.1986). When the legislature enacts a statute, it thereby provides constructive notice of the statute's provisions. *See Regal Properties v. Donovitz,* 479 S.W.2d 748, 750–51 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). Accordingly, the testator was charged with notice of the Act. He could have avoided substitution of fiduciaries by so providing in his will. Because he did not amend his will to prohibit substitution, he effectively allowed substitution under the Act. In fact, the will's language shows the testator contemplated the possibility of successor fiduciaries.

The statute has been held to be constitutional. *In re Estate of Touring,* 775 S.W.2d 39 (Tex.App.—Houston [14th Dist.] 1989, no writ).

We overrule Bank One's points of error. We affirm the judgment of the probate court.