NUMBER
13-02-624-CV

 

                         COURT
OF APPEALS

 

               THIRTEENTH
DISTRICT OF TEXAS

 

                  CORPUS
CHRISTI - EDINBURG

___________________________________________________________________

 

JAMES LAWRENCE WOOD, ET AL.,                           Appellants,

 

                                           v.

 

VICTORIA BANK & TRUST COMPANY, N.A.,
ET AL.,     Appellees.

___________________________________________________________________

 

                   On
appeal from the 94th District Court

                           of
Nueces County, Texas.

________________________________________________________  __________

 

            OPINION
ON MOTION FOR REHEARING

 

         Before
Chief Justice Valdez and Justices Rodriguez and Garza

               Opinion
on Motion for Rehearing by Justice Rodriguez

 








We grant the
motion for rehearing filed by appellees, Texas Commerce Bank, N.A. (TCB),[1]
Victoria Bank & Trust Company, Victoria Bankshares, Inc., and Wells Fargo
Bank Texas, N.A., withdraw our opinion dated February 10, 2005, and substitute
the following as the opinion of this Court.

Appellants, James
Lawrence Wood, Charles Kaffie and James Barnette, brought suit against
appellees alleging various statutory and common law causes of action.  Appellants=
claims arose from a transaction in which TCB substituted its own subsidiary
trust company as fiduciary on certain accounts and subsequently sold the
subsidiary to Victoria Bankshares.  After
granting several motions for partial summary judgment in favor of appellees,
the trial court granted a final summary judgment dismissing all claims asserted
by appellants.  By nine issues,
appellants challenge the trial court=s rulings.  We
affirm.

I.  FACTUAL AND PROCEDURAL BACKGROUND

The facts of this
case are not in dispute.  In 1993, TCB
purchased Ameritrust, a company which served as trustee for accounts in which
appellants had an interest.  After the
purchase, Ameritrust was renamed Texas Commerce Trust Company and later merged
into TCB.  As a result of the merger, TCB
became the trustee of appellants= accounts thereby creating a fiduciary relationship
with appellants.  








Early in 1994, with the approval of bank regulatory authorities, TCB
formed four subsidiary trust companies, including Texas Commerce Trust CompanyBCorpus Christi
(TCTC-CC).[2]  On
March 9, 1994, TCB entered into a fiduciary substitution agreement with TCTC-CC[3]
for the purpose of substituting TCTC-CC as the fiduciary for all Corpus
Christi-related accounts, including appellants=
accounts.  As required by statute, TCB
sent notice of the proposed substitutions to designated persons, including
appellants.  The notice advised that
account holders had ninety days to object to the proposed transfer.  One beneficiary objected to the transfer of the
account, and as a result that beneficiary=s account was not transferred.  The remaining accounts were transferred to
TCTC-CC on June 10, 1994.

On March 11,
1994, TCB entered into an agreement to sell the stock of TCTC-CC to Victoria
Bankshares for $8.75 million.[4]  TCB sent notice of the proposed sale to each
account holder and beneficiary, including appellants, on March 28, 1994.  Following regulatory approval from federal
and state authorities, the stock sale was completed on June 30, 1994.  In conjunction with the sale of stock to
Victoria Bankshares, TCTC-CC merged with Victoria Bank & Trust, a
subsidiary of Victoria Bankshares.[5]








After the sale to
Victoria Bankshares and merger with Victoria Bank & Trust, appellants filed
suit claiming that the transfer and sale of fiduciary appointments by TCB was
fraudulent and illegal.  Appellants charged
that the actions of TCB violated the law of trusts, deceptive trade practice
laws, breached fiduciary duties, and constituted conversion of trust
property.  Appellants further argued that
the Substitute Fiduciary Act did not authorize the transfer of fiduciary
accounts to a subsidiary trust company for the purpose of selling that trust
company to a third party.








Subsequently, the
trial court granted a series of motions for partial summary judgment and a
final summary judgment in favor of appellees. 
Appellees= first motion for partial summary judgment was
granted on November 25, 1997 with the trial court ruling that the Substitute
Fiduciary Act permitted TCB to form a subsidiary trust company and transfer
fiduciary accounts to that subsidiary. 
On July 20, 1998, the court granted appellees= second motion for partial summary judgment finding
that the statutorily required Irrevocable Undertaking filed by Texas Commerce
Equity Holdings, Inc., complied with the Substitute Fiduciary Act.  On May 31, 2000, the trial court granted
appellees= third motion for partial summary judgment, finding
that TCB=s actions did not breach the common law fiduciary
duties of loyalty, faithful administration of trust accounts, and full
disclosure.  On June 26, 2002, the trial
court granted appellees= fourth motion for partial summary judgment, finding
that the notice provided by TCB of the proposed transfer of fiduciary accounts
satisfied all the requirements of the Substitute Fiduciary Act.  On October 23, 2002, the trial court granted
a final summary judgment in favor of appellees, disposing of all parties and
all claims in the case.  Appellants
challenge all summary judgments on appeal.

II.  STANDARD OF REVIEW

We review de novo a trial court=s grant or denial of a
traditional motion for summary judgment.  See Natividad v. Alexsis, Inc., 875
S.W.2d 695, 699 (Tex. 1994); Alaniz v. Hoyt, 105 S.W.3d 330, 345 (Tex.
App.BCorpus Christi 2003,
no pet.).  To prevail, the moving party
bears the burden of showing that there is no genuine issue of material fact and
that he is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470,
471 (Tex. 1991).  In deciding whether
there is a genuine issue of material fact, evidence favorable to the non-movant
will be taken as true, and all reasonable inferences made and all doubts
resolved in the non-movant's favor.  Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).

III.  ANALYSIS

Appellants raise nine issues on appeal challenging TCB=s transfer of
fiduciary accounts to TCTC-CC and the subsequent sale to Victoria
Bankshares.  As a threshold matter, we
will address appellants= fourth issue and
determine whether, under the facts of this case, the Substitute Fiduciary Act
could be utilized to transfer the fiduciary accounts to TCTC-CC.

A.  Substitute Fiduciary Act








By their fourth issue, appellants argue that TCB improperly and
illegally invoked the Substitute Fiduciary Act to transfer fiduciary
appointments to its subsidiary because the Act only allows bank holding
companies to Aconsolidate@ their trust functions
into a separate trust subsidiary. 
Appellants assert that the statute was used by appellees in this
transaction to Ade-consolidate@ the fiduciary
appointments from TCB to its four subsidiary trust companies, and therefore the
transfer is illegal and void.  In support
of their argument appellants cite the language of the statute, case law
interpreting the statute, and the legislative history.  Appellees respond by arguing:  (1) neither the language of the statute nor
the legislative history prohibits a Adecentralizing@ transfer; (2) the
language of the statute is clear and unambiguous and therefore legislative
history should not be used to change the statute=s meaning; and (3) the transaction nonetheless
satisfies the purpose of the statute.

The Substitute Fiduciary Act provides, in relevant part:

(a) A subsidiary trust company and one or more of its affiliated banks
may enter into one or more agreements under which the subsidiary trust company
is substituted as fiduciary for each affiliated bank in each fiduciary account
listed in the agreement.  The agreement
shall be filed with the banking commissioner before the effective date of the
substitution . . . . 

 

* * * *

(g) On the effective date the subsidiary trust company succeeds to all
right, title, and interest in all property that the affiliated bank holds as
fiduciary, except property held for accounts for which there has been no
substitution under this Act, without the necessity of any instrument of
transfer or conveyance, and the subsidiary trust company shall, without the
necessity of any judicial action or action by the creator of the fiduciary
account, become fiduciary and perform all the duties and obligations and
exercise all the powers and authority connected with or incidental to that
fiduciary capacity . . . .

 








Substitute
Fiduciary Act, 70th Leg., R.S., ch. 207, ' 2, 1987 Tex. Gen.
Laws 1487, repealed by Act of May 24, 1997, 75th Leg., R.S., ch. 1008, ' 6(a), 1997 Tex. Gen.
Laws 3091, 3602.        








This Court=s ultimate goal in
construing a statute is to give effect to the legislature=s intent as expressed
in the language of the statute.  See
Crimmins v. Lowry, 691 S.W.2d 582, 584 (Tex. 1985).  The Substitute Fiduciary Act does not
expressly address whether consolidation is a requirement when transferring
fiduciary accounts.  The statute only
provides that Aa subsidiary trust
company and one or more of its affiliated banks may enter into one or more
agreements under which the subsidiary trust company is substituted as
fiduciary. . . .@  From this language alone, we cannot conclude
that the legislature intended to require the fiduciary substitution to result
in a consolidation when utilizing the statute. 
To the contrary, the failure to include any language requiring
consolidation indicates that the legislature did not intend such a requirement.  See Cameron v. Terrell & Garrett, Inc.,
618 S.W.2d 535, 540 (Tex. 1981) (stating that if the legislature had intended
to include a restriction it could easily have done so by simply drafting the
restriction into a provision of the act); Allison v. Allison, 3 S.W.3d
211, 214 (Tex. App.BCorpus Christi 1999,
no pet.) (A[H]ad the Legislature
intended to include visitation within the exception to Texas's continuing
jurisdiction . . . it would have included the word visitation.@).  Because the plain language of the Substitute
Fiduciary Act does not require consolidation, we presume the legislature did
not intend to include such a requirement in the Act.  Therefore, we find that any transfer of
fiduciary accounts between a bank and its subsidiary meeting the requirements
of the statute is allowed regardless of whether the transfer results in a
consolidation or de-consolidation of accounts.








Moreover, our review of case law and the Act=s legislative history
reveals that neither specifically addresses whether the statute is to be used
solely for the purpose of consolidating fiduciary accounts.  See Bank One, N.A. v. Ameritrust Tex.,
N.A., 858 S.W.2d 516 (Tex. App.BDallas 1993, writ
denied); In re Estate of Touring, 775 S.W.2d 39 (Tex. App.BHouston [14th Dist.]
1989, no writ).  Appellants argue that
the purpose of the Act, as clearly stated in In re Touring, is to
Apromote efficient and
cost-effective delivery of fiduciary services by allowing the placement of
these services within a single corporate entity which maintains offices
throughout the State of Texas.@  See In re Estate of Touring, 775
S.W.2d at 42.  Appellants also argue that
the legislative history makes clear that the purpose of the statute is to
consolidate fiduciary services.  However,
in reviewing the house and senate committee discussions, the driving force
behind the Act appears to have been the promotion of efficient and
cost-effective delivery of fiduciary services to enable the continuance of
local trust services and to provide trust services to communities in which they
were not economically feasible before. 
The centralization of fiduciary accounts into a single corporate entity,
as stated in In re Estate of Touring, was simply a method by which the
legislature contemplated the purpose being achieved.  See id.  Moreover, we have found no discussions
regarding the legislature=s intent to
specifically limit the transfers to consolidations only.  Because we find no clear legislative intent
that there be a restriction or limitation on transfers under the statute and no
restriction was expressly stated in the statute, we decline appellants= invitation to create
one.  See Jones v. Liberty Mut. Ins.
Co., 745 S.W.2d 901, 901 (Tex. 1988) (AA court may not
judicially amend a statute and add words that are not implicitly contained in
the language of the statute.@); Cameron, 618
S.W.2d at 540 (explaining that additional words or requirements can be inserted
into a statute only when necessary to give effect to clear legislative intent).

          As
neither the language of the statute, case law, nor the legislative history
explicitly limits the use of the Substitute Fiduciary Act for consolidation
purposes only, we conclude the Act provided statutory authority for TCB to
substitute TCTC-CC as fiduciary on the trust accounts.  Appellants= fourth issue is overruled.

B.  Irrevocable Undertaking








In issues seven and eight, appellants argue that the irrevocable
undertaking filed by Texas Commerce Equity Holdings, Inc.,[6]
failed to comply with the Substitute Fiduciary Act.  Section 7(a) of the Act states that Athe subsidiary trust
company=s owning bank holding
company shall file with the banking commissioner an irrevocable undertaking to
be fully responsible for the existing and future acts and omissions of its
subsidiary trust company.@  Substitute Fiduciary Act, 70th Leg., R.S.,
ch. 207, ' 7, 1987 Tex. Gen.
Laws 1487 (repealed 1997).         Appellants
assert that the undertaking was insufficient because:  (1) it was limited to future acts of the
trust subsidiary Afor so long as the
Subsidiary Trust Company is owned, directly or indirectly, by [Texas Commerce
Equity Holdings, Inc.]@; and (2) Texas
Commerce Equity Holdings, Inc. was not a proper legal entity to execute and
file the irrevocable undertaking.

After reviewing the irrevocable undertaking filed by Texas Commerce
Equity Holdings, Inc., we find that it satisfies the statutory
requirements.  The statute only requires
that a bank holding company be fully responsible for the existing and future
fiduciary acts and omissions of its subsidiary trust company.  See id.  An undertaking stating that the bank holding
company will be responsible only for so long as the subsidiary is owned by the
holding company is no less irrevocable and fulfills the obligation stated in
the statute.  Moreover, we find Texas
Commerce Equity Holdings, Inc., to be an owning bank holding company as defined
under the Bank Holding Company Act,[7]
and it is therefore an appropriate entity to file the irrevocable
undertaking.  Appellants= seventh and eighth
issues are overruled.

C.  Constitutionality of the Act








By their ninth issue, appellants argue that the Substitute Fiduciary
Act, as construed by the trial court, is unconstitutional.  Appellants assert that the trial court
construed the Act to allow fiduciary accounts to be transferred to a third
party for consideration without notice and regardless of the contractual
arrangement between the fiduciary and the settlor or beneficiaries of the
trust.  Appellants contend we must
determine the constitutionality of the Act in light of this interpretation by
the trial court.  We disagree.

Appellants misinterpret the trial court=s findings regarding the scope of the Act.  The trial court in this case ruled that the Substitute Fiduciary Act permitted
TCB to form a subsidiary trust company and transfer fiduciary accounts to that
subsidiary.  The court did not construe
the Act to allow fiduciary accounts to be transferred to a third party as
appellant contends.  The transfer of
accounts to a third party, which took place in this case, was made pursuant to
Texas Revised Civil Statute article 342-305, a separate statute.  See Act of March 23, 1943, 48th Leg.,
R.S., ch. 97, subch. III, art. 8, 1943 Tex. Gen. Laws 128,140, amended by Acts
1993, 73rd Leg., R.S., ch. 765, ' 3, 1993 Tex. Gen. Laws 2972, 2976, and ch. 944, ' 2, 1993 Tex. Gen. Laws 4043 (now codified at Tex. Fin. Code Ann. ' 59.004 (Vernon Supp.
2004-2005)).  Therefore, the constitutionality of the
Substitute Fiduciary Act as a statute allowing the transfer of accounts to a
third party need not be addressed.  Appellants= ninth issue is
overruled.

D.  Transfer of Fiduciary
Appointments for Consideration








By their fifth issue, appellants argue that under established trust
law, a trustee can never resign or transfer his office for monetary consideration,
and where a trustee has transferred his fiduciary appointment in exchange for
valuable consideration such transfer is void and the consideration should be
disgorged and made part of the trust estate. 
See Sugden v. Crossland, 3 Sm. & Gif. 192, 65 Eng.
Rep. 620 (1856); Rosenfeld v. Black, 445 F.2d 1337 (2d. Cir. 1971);
Field v. Western Life Indemnity Co., 166 F. 607, 610 (N.D. Ill. 1908);
Lednum v. Dallas Trust & Savings Bank, 192 S.W. 1127, 1128 (Tex. Civ.
App.BDallas 1917, writ ref=d).   

Appellees contend that the authorities relied on by appellants are
outdated and do not take into account the evolution of the law relating to
corporate fiduciaries.  Moreover, appellees
argue that none of the cases cited involved statutes authorizing a transfer of
fiduciary appointments in exchange for consideration.  We agree.

In this case, the transfer of fiduciary appointments upon the sale and
merger of TCTC-CC into Victoria Bank & Trust was made pursuant to Texas
Revised Civil Statute article 342-305 which provides:

[I]f any merging
institution shall at the time of the merger be acting as trustee, guardian,
executor, administrator, or in any other fiduciary capacity, the resulting bank
shall, without the necessity of any judicial action or action by the creator of
such trust, continue such office, trust or fiduciary relationship and shall
perform all of the duties and obligations and exercise all of the powers and
authority connected with or incidental to such fiduciary relationship in the
same manner as though the resulting bank had been originally named or
designated as such fiduciary.

 








Act
of March 23, 1943, 48th Leg., R.S., ch. 97, subch. III, art. 8, 1943 Tex. Gen.
Laws 128,140 (amended 1993).  Article
342-305 expressly authorized Victoria Bank & Trust, after the merger, to
succeed to any fiduciary offices held by TCTC-CC.  As a result, the fiduciary appointments were
effectively transferred during the merger; a merger which resulted from the
exchange of consideration for the stock of TCTC-CC.  See id.  It is this transfer which appellants argue
violates the common law prohibition against the sale of a fiduciary office for
profit.  However, reading the statute in
the context in which it was applied indicates that the legislature contemplated
and implicitly acknowledged that a bank would receive consideration in
exchange, in part, for the transfer of fiduciary appointments.  See id.  To this extent, the statute can be interpreted
as allowing the transfer of a fiduciary office in exchange for consideration. See
id.  Accordingly, we find under the
facts of this case that the common law was modified by statute, article
342-305, to permit the transfer of fiduciary appointments for consideration.[8]  Appellants= fifth issue is overruled.

E.  Breach of Fiduciary Duty

By their first, second and sixth issues, appellants argue that the
fiduciary appointments held by TCB were subject to fiduciary duties which were
breached.  Specifically, appellants
assert that by transferring the fiduciary accounts to its subsidiary and then
selling the subsidiary to a third party, TCB breached the common law fiduciary duties of loyalty, which included
refraining from self-dealing, faithful administration of trust accounts, and
the duty of full disclosure.  








Appellees do not dispute that the fiduciary appointments held by TCB
were subject to fiduciary duties.  They
argue, however, that no duties were breached as a matter of law because TCB
accomplished the substitution and sale of the fiduciary accounts by utilizing
statutes which authorized these transactions. 
Appellees cite to the Substitute Fiduciary Act as authorizing the
transfer of accounts to TCTC-CC and refer to Texas Revised Civil Statute
article 342-305 as authorizing the sale of TCTC-CC.

We agree that the Substitute Fiduciary Act authorized the transfer of
accounts to TCTC-CC, as discussed earlier. 
See Substitute Fiduciary Act, 70th Leg., R.S., ch. 207, ' 2, 1987 Tex. Gen.
Laws 1487 (repealed 1997).   We also
agree that article 342-305 provides for the automatic transfer of fiduciary
appointments upon the successful merger of two institutions.  See Act of March 23, 1943, 48th Leg.,
R.S., ch. 97, subch. III, art. 8, 1943 Tex. Gen. Laws 128,140 (amended
1993).  Prior to the enactment of these
two statutes, under state law the appointment of a successor trustee could take
place only by court order or pursuant to the instrument creating the fiduciary
relationship.  See Tex. Prop. Code Ann. ' 113.083(a) (Vernon
1995).  However, the Legislature enacted
these statutes to expressly permit the transfer of accounts Awithout the necessity
of any judicial action or action by the creator@ of the fiduciary account.  To find that utilizing these statutes to
transfer the accounts still allowed for a breach of common law fiduciary duties
would render the statutes meaningless. 
Therefore, we conclude that by transferring the accounts pursuant to
statute, no duties were breached as a matter of law.

Accordingly, appellants= first, second and
sixth issues are overruled.  

 








F.  Appellants= Remaining Claims

By their third issue, appellants challenge the trial court=s final summary
judgment which disposed of appellants= negligence, fraud,
DTPA, conversion and civil conspiracy claims against appellees.  However, appellants= brief contains no argument
supported by citations to authority and the record as to why the trial court
erred in dismissing these claims. 
Therefore, appellants have waived any error regarding this issue.  See Tex.
R. App. P. 38.1(h); Columbia Rio Grande Reg'l Hosp. v. Stover, 17
S.W.3d 387, 392 (Tex. App.BCorpus Christi 2000,
no pet.) (stating that issues not supported by argument and authority are
deemed waived).  Appellants= third issue is
overruled.

IV.  CONCLUSION

Having overruled appellants= issues on appeal, we
affirm the judgment of the trial court.

 

NELDA V. RODRIGUEZ

Justice

 

Opinion on Motion for Rehearing delivered


and filed this 18th day of August, 2005.

 











[1]  Texas Commerce Bank is now JP
Morgan Chase Bank but will be referred to as TCB for purposes of this opinion.





[2]  The four subsidiary trust companies
formed by TCB were Texas Commerce Trust CompanyBCorpus Christi, Texas Commerce
Trust CompanyBSherman, Texas Commerce Trust
CompanyBWaco, and Texas Commerce Trust
CompanyBWichita Falls.  Only Texas Commerce Trust CompanyBCorpus Christi is a party to this
lawsuit.





[3]  The substitution agreement was
entered into pursuant to article 548h of the Texas Revised Civil Statutes.  See Substitute Fiduciary Act, 70th
Leg., R.S., ch. 207, ' 2, 1987 Tex. Gen. Laws 1487, repealed
by Act of May 24, 1997, 75th Leg., R.S., ch. 1008, ' 6(a), 1997 Tex. Gen. Laws 3091,
3602 (now codified at Tex. Fin. Code
Ann. '' 274.001-.203 (Vernon Supp. 2004-2005)).  We will refer to this statute as the
Substitute Fiduciary Act or the Act. 





[4]  Appellees state in their brief that
the $8.75 million sales price was the approximate amount TCB paid for the same
accounts a few months earlier.  This
price was based on the multiple of three times the revenue stream produced by
the fiduciary fees.





[5] 
TCTC-CC merged into Victoria Bank & Trust pursuant to Texas Revised
Civil Statute article 342-305.  Act of
March 23, 1943, 48th Leg., R.S., ch. 97, subch. III, art. 8, 1943 Tex. Gen.
Laws 128,140, amended by Acts 1993, 73rd Leg., R.S., ch. 765, ' 3, 1993 Tex. Gen. Laws 2972, 2976,
and ch. 944, ' 2, 1993 Tex. Gen. Laws 4043 (now
codified at Tex. Fin. Code Ann. ' 59.004 (Vernon Supp. 2004-2005)).





[6]  Texas Commerce Equity Holdings,
Inc., owned 100% of the stock of TCB.





[7]  The Substitute Fiduciary Act
incorporates the definition of Abank holding company@ stated in the Bank Holding Company Act.  See 12 U.S.C.A. ' 1841(a) (2001).  A bank holding company is defined as any
company which has control over any bank or over any company that is or becomes
a bank holding company.  See id.  Because Texas Commerce Equity Holdings, Inc.
owned all of TCB=s stock, it was a bank holding
company.





[8] 
We note that the Trust Company Act, enacted in 1997, expressly allows
all of the assets of a trust institution, including the right to control
accounts established with the trust institution, to be purchased.  Tex.
Fin. Code Ann. ' 182.401 (Vernon Supp.
2004-2005).  The purchaser succeeds by
operation of law to all of the rights, privileges, and obligations of the
selling trust institution under each account included in the assets
acquired.  Id.